NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2021[*]
Decided October 26, 2021

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1810

| | |
|---|---|
| WARREN SHAFFORD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 C 50111 |
| WEXFORD HEALTH SOURCES, INC., et al., *Defendants-Appellees*. | John J. Tharp, Jr., *Judge*. |

**O R D E R**

Warren Shafford, an Illinois inmate, challenges a summary judgment entered in favor of prison medical staff, who, he asserts, recklessly delayed surgery to fix his torn tendon. The district court concluded that Shafford did not produce sufficient evidence

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

from which a jury could find that his care deviated from accepted medical practice. We affirm.

Shafford tore a tendon in his right shoulder while lifting weights on October 6, 2014. He went to the health care unit for treatment and was greeted by Nurse Lynn Chattic, who, he says, seemed dismissive of his complaints, telling him to "sit in the corner" to wait for treatment, whereupon she went to another room and begin laughing with colleagues. Fifteen minutes later, a second nurse examined Shafford. She provided him a 10-day gym and yard restriction. Shafford did not receive treatment for another two days, when a third nurse gave him ibuprofen to manage the pain.

Two days later, on October 10, Irene Dyer, a physician's assistant, evaluated Shafford. She noted that Shafford's right shoulder was bruised and sore to the touch but that he was not in distress and had full range of motion in his shoulder. She ordered x-rays, a post-x-ray follow-up visit, and a two-month prescription of ibuprofen. But the nursing staff failed to schedule the x-rays, so three weeks later Shafford returned to the health care unit and complained to Dyer. She resubmitted the x-ray orders, replaced Shafford's ibuprofen prescription with a stronger medication, and requested that a doctor provide a second opinion.

That second opinion was provided by Jill Wahl, a doctor at the prison, who examined Shafford on November 10 and diagnosed him with a possible torn pectoral muscle. Dr. Wahl discussed her plan to have him be seen by an orthopedic surgeon in four to six weeks, and in the meantime receive physical therapy. She decided to continue Shafford's course of treatment and schedule a follow-up visit in two weeks. When Dr. Wahl learned that a timely appointment could not be arranged with an orthopedic surgeon at the hospital where she wanted to send Shafford, she promptly sent him to a local orthopedic surgeon.

The surgeon diagnosed Shafford with a torn tendon. At his direction, Dr. Wahl arranged for Shafford to be given an MRI, the results of which confirmed the diagnosis. To develop a treatment plan further, Dr. Wahl scheduled Shafford to meet again with the surgeon. The surgeon told Shafford that, given his age (then 55) and type of injury, surgery to fix the tendon would be optional; even without any surgery, Shafford would recover from the injury, with some lingering weakness. Further, the passage of time since the injury meant that surgery to repair the tendon would be more complex.

Shafford elected surgery, and an operation was performed in February 2015. After follow-up visits over the ensuing months, the surgeon continually reported that Shafford's recovery progressed well.

Shafford sued Dr. Wahl, Physician Assistant Dyer, and Nurse Chattic for deliberate indifference in delaying treatment for his shoulder pain for months. He also asserted that their employer, Wexford Health Sources, perpetuated this delay through its policy of rotating Dr. Wahl among different prisons.

The court granted summary judgment for the defendants, concluding that Shafford's injury was serious, but no evidence in the record reflected that any defendant provided deficient care. With regard to Nurse Chattic (the defendant whom Shafford encountered first in the health-care unit), the court found that her interactions with him—telling him that there was nothing wrong and then laughing with other nurses—were far too limited to rise to the level of deliberate indifference. As for Physician Assistant Dyer, the court found nothing in the record to reflect that her care was anything but reasonable. The court explained that no evidence suggested that she had any responsibility for Shafford's three-week delay in receiving x-rays, or that the delay caused any harm. And with respect to Dr. Wahl, the court concluded that there was no evidence that her decision to forgo surgery in favor of conservative treatment—through physical therapy and pain medication—was deliberately reckless or even unreasonable.

On appeal, Shafford argues only generally that the defendants were deliberately indifferent to his pain when they contributed to the delay in his surgery. But substantially for the reasons stated by the district court, Shafford has not met his burden of introducing evidence from which a reasonable jury could find that any defendant disregarded a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Beginning with Nurse Chattic and Physician's Assistant Dyer, we agree with the district court that nothing in the record reflects that either was personally responsible for the delay in scheduling surgery. *See Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009). Nurse Chattic's only involvement here was directing Shafford to sit in the healthcare unit until he could see a medical professional—a wait that lasted only 15 minutes. Shafford faults Dyer for not ensuring that his x-rays were promptly taken but, as the district court points out, he offered no evidence to contradict her testimony that scheduling appointments was not her responsibility. The court also properly noted that no evidence suggested that she was indifferent to whether the x-rays were taken; to the contrary, upon learning that x-rays had not been scheduled, she immediately renewed her x-ray order.

Similarly, no reasonable jury could conclude that Dr. Wahl acted with deliberate indifference in ordering conservative treatment instead of proceeding straight to surgery. The record does not reflect that Dr. Wahl's course of treatment unnecessarily prolonged Shafford's pain, *see Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015), or was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). According to the surgeon who operated on Shafford (he being the only specialist on record), patients of Shafford's age demographics (mid-50s) often go without surgery when physical therapy is a viable treatment option. Given this testimony, it was not unreasonable for Dr. Wahl to pursue a conservative course of treatment (through regular checkups, pain medication, and physical therapy) before referring Shafford for a second opinion. Shafford's disagreement with an otherwise reasonable course of treatment cannot establish the basis for deliberate indifference. *Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021).

Finally, Shafford, in his reply brief, challenges the judgment in favor of Wexford. But arguments raised for the first time in a reply brief are waived. *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021). Regardless, summary judgment for Wexford was correct because there is no evidence that it had an official policy requiring Dr. Wahl to split time among prisons (indeed, she was stationed full time at Shafford's prison during the relevant period). *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

We have considered Shafford's other arguments, and none has merit.

AFFIRMED